UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTT KAUFMAN,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>Defendant. | Case No. 1:24-cv-05203 |

## COMPLAINT

**NOW COMES** SCOTT KAUFMAN ("Plaintiff"), by and through his undersigned counsel, complaining of EQUIFAX INFORMATION SERVICES, LLC ("Equifax" or "Defendant"), as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681 *et seq*. and defamation.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1337.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. §§1391(b)(1)-(2) because all the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

1

## PARTIES

4. Plaintiff is a natural person, over 18-years-of-age, residing in the Northern District of Illinois.

5. Defendant Equifax Information Services, LLC ("Equifax") is a prominent credit reporting agency. Equifax maintains its principal place of business in Atlanta, Georgia.

## FACTUAL ALLEGATIONS

6. In September 2021, an unknown offender stole Plaintiff's identity and, unbeknownst to Plaintiff, used Plaintiff's identity to lease two apartments.

7. The first property was opened on September 20, 2021, with The Rivington Apartments, located in Hoboken, New Jersey ("Rivington property")

8. The second property was opened on September 22, 2021, with The Apollo Apartments, located at 600 H Street NE, Washington, D.C. ("Apollo property").

9. On January 27, 2022, Plaintiff received a phone call from a detective working for the Hoboken, New Jersey police department, who explained that Plaintiff was listed as a contact reference under an apartment that may be linked to identity fraud.

10. Concerned for his consumer credit standing, Plaintiff reviewed his credit reports and discovered that EQUITYTHERIVINGTON was reporting an unauthorized account on his credit report ("Rivington account").

11. Specifically, the Rivington account reported a balance of $25,687 owed on the Rivington property.

12. On January 27, 2022, Plaintiff immediately filed an identity theft police report with the Chicago Police Department pertaining to the unauthorized opening of the Rivington account.

13. On January 28, 2022, Plaintiff filed an Identity Theft Report with the Federal Trade Commission ("FTC") averring, *inter alia,* that Plaintiff was a victim of identity theft and the Rivington account was opened without his authorization.

14. On January 29, 2022, Plaintiff submitted an online dispute of the Rivington account to Equifax through Equifax's website.

15. In response, Equifax removed the erroneous tradeline in connection with the Rivington account from Plaintiff's credit report.

16. In February 2024, Plaintiff, hoping to purchase a new home in Chicago, applied for a pre-authorization on a mortgage.

17. Unfortunately, on February 8, 2024, the mortgage application evaluator informed Plaintiff that his application was denied due to an outstanding collection balance said to be owed by Plaintiff.

18. Specifically, Fair Collections and Outsourcing ("FCO") was reporting a balance of $59,761 owed for the Apollo property on Plaintiff's credit reports ("subject account" or "fraudulent account").

19. The fraudulent account was reporting derogatorily on Plaintiff's credit reports and was significantly harming Plaintiff's credit score.

20. Shortly thereafter, Plaintiff submitted an online dispute of the subject account to Equifax through Equifax's website. Specifically, Plaintiff's dispute informed Equifax that Plaintiff was an identity theft victim and that the subject account was opened without his authorization. To corroborate his dispute, Plaintiff explained that he was a victim of identity theft in the past, and further provided his FTC dispute of the Rivington account purchased two days before the subject account.

3

21. On February 20, 2024, Equifax "verified" that the fraudulent account was opened by, or authorized by, Plaintiff.

22. Moreover, On February 23, 2024, Plaintiff contacted FCO to dispute the subject account, however, FCO failed to correct the subject account and continued reporting the erroneous tradeline to Equifax.

23. Despite Plaintiff providing his previous dispute of the Rivington account, which Equifax confirmed to be fraudulent, Equifax verified the subject account and continues to report the subject account derogatorily on Plaintiff's Equifax credit report.

24. On March 1, 2024, Plaintiff filed another Identity Theft Report with the FTC, stating, again, that (1) Plaintiff was a victim of identity theft and (2) the subject account was opened without his authorization.

25. On March 3, 2024, Plaintiff sent another online dispute of the subject account to Equifax through its website and enclosed the FTC Identity Theft Report outlined above.

26. Despite Plaintiff's dispute and corroborating evidence, Equifax responded to Plaintiff's dispute, again, verifying the fraudulent account and continues to report the erroneous tradeline on Plaintiff's Equifax credit report until today.

## **DAMAGES**

27. Plaintiff has worked hard to build and maintain a good credit history.

28. The inaccurate reporting of the fraudulent account has devastated Plaintiff's credit score and stopped him from obtaining a mortgage for a new home in Chicago.

29. The inaccurate reporting of the fraudulent account has destroyed Plaintiff's creditworthiness because it creates the false impression that Plaintiff is in default on the fraudulent account, thus rendering Plaintiff a high-risk consumer and impeding his ability to obtain credit.

30. Defendant's reckless inaccurate reporting of the fraudulent account has frustrated Plaintiff's ability to control his credit score and his ability to benefit from the credit history he has built over the years.

31. As a result of Defendant's conduct, Plaintiff has suffered significant damages, including credit denials, the loss of credit opportunity, increased cost of credit, humiliation, loss of time disputing the inaccurate reporting, time expended monitoring his credit files and sending credit disputes, mental anguish, emotional distress, lack of sleep, and anxiety.

32. Moreover, Defendant's conduct has resulted in monetary damages including the costs of mailing disputes, purchasing credit reports, and subscribing to credit monitoring services.

33. Plaintiff did not file this action as knee-jerk reaction to a perceived harm, Plaintiff's financial health has been devastated as a result of Defendant's reckless conduct.

34. Plaintiff has literally exhausted all efforts short of judicial action to compel Defendant to remove the fraudulent account from his credit report.

35. Due to Defendant's repeated refusal to remove the fraudulent account from Plaintiff's credit reports, Plaintiff was forced to initiate the instant action to compel the same.

## COUNT I – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

36. Plaintiff restates and realleges all preceding paragraphs as fully set forth herein.

37. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(b) and (c).

38. Plaintiff is a "person" as defined by 15 U.S.C. §1681a(b).

39. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

40. Equifax is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

41. At all times relevant, the above-mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

42. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

43. The FCRA requires the credit reporting industry to implement procedures and systems to promote accurate credit reporting.

44. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to conduct a reasonable investigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or delete the disputed information within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

45. Plaintiff provided Equifax with all relevant information and documentation in his disputes to support his contention that he was an identity theft victim and that the disputed account was unauthorized.

46. A cursory review of the evidence submitted by Plaintiff would have confirmed that the disputed account was fraudulent and not authorized by Plaintiff.

47. Equifax failed to conduct any meaningful investigation into Plaintiff's disputes. Instead, it continued to blindly report the false information provided to it by FOC.

48. Equifax violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished concerning Plaintiff.

49. Equifax repeatedly distributed patently false and materially misleading consumer reports concerning Plaintiff to third parties.

50. Equifax failed to follow reasonable procedures to assure maximum possible accuracy by repeatedly ignoring the evidence provided by Plaintiff and blindly accepting erroneous information furnished to it by FOC as accurate.

51. Had Equifax followed reasonable procedures to assure maximum possibly accuracy, it would have reviewed the disputes and evidence submitted by Plaintiff and promptly discovered that Plaintiff was an identity theft victim in the exact same way he was determined to be following his dispute of the Rivington account. Further, any reasonable investigation would have confirmed that the subject account was opened two days before the Rivington account, further demonstrating its identical fraudulence. Instead, Equifax repeatedly accepted erroneous information as true and continued the reporting of the erroneous information pertaining to the disputed subject account.

52. Equifax should have implemented procedures and safeguards to prevent the repeated reporting of fraudulent accounts and inquiries.

53. Equifax violated 15 U.S.C. §1681i(a)(1) by failing to (1) conduct a reasonable investigation into each of Plaintiff's disputes and (2) delete the fraudulent account from Plaintiff's credit files.

54. Had Equifax conducted a reasonable investigation into Plaintiff's valid disputes, it would have promptly determined that the disputed subject account was fraudulent.

55. Equifax took no meaningful action to determine whether the disputed subject account was fraudulent and blindly reported the same with no regard to its accuracy.

7

56. At a very minimum, Equifax should have requested that FOC provide sufficient proof that their reporting was accurate. Instead, Equifax continued to recklessly report false and unreliable information regarding the subject account.

57. Equifax violated 15 U.S.C. §1681i(a)(2) by failing to provide adequate notification of Plaintiff's disputes to FOC. Upon information and belief, Equifax may have failed to forward all relevant information provided by Plaintiff to FOC.

58. Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff with regard to the fraudulent account.

59. Equifax violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the fraudulent account that was the subject of Plaintiff's disputes after Plaintiff submitted compelling evidence that the disputed account was fraudulent.

60. Equifax violated 15 U.S.C. §1681c(f) by failing to notate that Plaintiff disputed the reporting of the fraudulent account. Equifax is required to notate each account that a consumer disputes as "disputed" in each consumer report that includes the disputed information.

61. Equifax violated 15 U.S.C. §1681c-2(a) by failing to block the information pertaining to the fraudulent accounts and inquiries within 4 days after Plaintiff notified Equifax of the identity theft.

62. Equifax violated 15 U.S.C. §1681c-2(b) by failing to promptly notify FOC that the disputed information may be a result of identity theft and that a block of the disputed information is mandated by 15 U.S.C. §1681c-2(a).

63. Equifax violated 15 U.S.C. §1681c-2(c) by failing to promptly notify Plaintiff within the timeframe prescribed by 15 U.S.C. §1681i(a)(5(B) that Equifax has declined to block the disputed information.

64. Equifax had actual knowledge that the erroneous reporting of the fraudulent account would have a significant adverse effect on Plaintiff's credit worthiness and ability to obtain credit.

65. Despite having actual knowledge that Plaintiff's credit files contained erroneous information, Equifax readily distributed Plaintiff's inaccurate and misleading credit reports to one or more third parties, thereby misrepresenting facts about Plaintiff and Plaintiff's creditworthiness.

66. By deviating from the standards established by the credit reporting industry and the FCRA, Equifax acted with a reckless disregard for its duty to report accurate and complete consumer credit information.

67. It is Equifax's regular business practice to blindly report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

68. Equifax's non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its mistreatment of Plaintiff.

69. Equifax has exhibited a pattern of refusing to correct errors in consumer credit files despite being on notice of patently false and materially misleading information contained in such files, ultimately valuing its own convenience above its grave responsibility to report accurate consumer data.

70. As stated above, Plaintiff was significantly harmed by Defendant's conduct.

**WHEREFORE**, Plaintiff prays for the following relief:

a. A finding that Equifax's conduct as set forth herein violated the FCRA;

b. An Order enjoining Equifax from reporting the fraudulent accounts and inquiries;

c. An award of compensatory damages to Plaintiff to be determined by the jury;

   d. An award of statutory damages of $1,000.00 for each violation of the FCRA;

   e. An award of punitive damages to be determined by the jury; and

   f. An award of reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o; and,

   g. Awarding any other relief as this Honorable Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: June 21, 2024    Respectfully Submitted,

/s/ *Mohammed O. Badwan*
Mohammed O. Badwan, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 S. Highland Ave., Ste. 200
Lombard, IL 60148
Phone: (630) 575-8180
mbadwan@sulaimanlaw.com